1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| KATHERINE KING, derivatively on behalf of STARBUCKS CORPORATION, | No. **2:24-cv-01720** |
| Plaintiff, | **COMPLAINT** |
| v. | |
| LAXMAN NARASIMHAN, RACHEL RUGGERI, RICHARD E. ALLISON, JR., ANDREW CAMPION, BETH FORD, MELLODY HOBSON, JORGEN VIG KNUDSTORP, NEAL MOHAN, SATYA NADELLA, DANIEL SERVITJE, MIKE SIEVERT, and WEI ZHANG, | **JURY TRIAL DEMANDED** |
| Defendants, | |
| And | |
| STARBUCKS CORPORATION, | |
| Nominal Defendant. | |

COMPLAINT - 1

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Katherine King ("Plaintiff"), by Plaintiff's undersigned attorneys, derivatively and on behalf of Nominal Defendant Starbucks Corporation ("Starbucks" or the "Company") files this Verified Shareholder Derivative Complaint against defendants Laxman Narasimhan ("Narasimhan"), Rachel Ruggeri ("Ruggeri"), Richard E. Allison, Jr. ("Allison"), Andrew Campion ("Campion"), Beth Ford ("Ford"), Mellody Hobson ("Hobson"), Jorgen Vig Knudstorp ("Knudstorp"), Neal Mohan ("Mohan"), Satya Nadella ("Nadella"), Daniel Servitje ("Servitje"), Mike Sievert ("Sievert"), and Wei Zhang ("Zhang") (collectively, the "Individual Defendants", and together with Starbucks, the "Defendants") for breaches of their fiduciary duties as directors and/or officers of Starbucks, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and for violations of Sections 14(a), 10(b), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and against Defendants Narasimhan and Ruggeri for contribution under Sections 10(b) and 21D of the Exchange Act. As for Plaintiff's complaint against the Individual Defendants, Plaintiff alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Starbucks, legal filings, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a shareholder derivative action that seeks to remedy wrongdoing committed by the directors and officers of Starbucks from November 2, 2023 to April 30, 2024, both dates inclusive (the "Relevant Period").

COMPLAINT - 2

2.      Starbucks is a Washington-incorporated multinational chain of coffeehouses and roastery reserves. The Company represents that it "purchase[s] and roast[s] high-quality coffees that [the Company] sell[s], along with handcrafted coffee, tea and other beverages and a variety of high-quality food items through company-operated stores."[1]

3.      During the Relevant Period, the Individual Defendants breached their fiduciary duties by personally making and/or causing the Company to make to the investing public a series of materially false and misleading statements regarding the business, operations, and prospects of the Company. Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose, *inter alia*, that: (1) Defendants did not possess reliable information with respect to Starbucks's projected revenue outlook and anticipated growth; (2) Defendants minimized the risk that Starbucks faced from seasonality and growth in foreign markets, especially China; and (3) because it was unable to handle the existing macro uncertainty and competition, particularly in the Chinese market, the Company's Reinvention platform failed to meet the Company's stated measures. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

4.      On April 30, 2024, the truth emerged when Starbucks issued a press release that revealed the Company's poor financial performance for the second quarter of the fiscal year ending September 29, 2024 (the "2024 Fiscal Year"). In relevant part, the press release revealed that the Company's store sales declined globally 4%, with traffic falling 7%, and further disclosed a 2% decline in new revenues to $8.6 billion. In addition, Starbucks lowered its guidance for the 2024 Fiscal Year and reasoned that this decision was based off of global declines in store sales, net revenues, and both GAAP and non-GAAP earnings.

5.      On this news, the price of the Company's common stock fell $14.05 per share, or

---

[1] https://www.sec.gov/ix?doc=/Archives/edgar/data/829224/000082922423000058/sbux-20231001.htm

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵀᴴ Ave. W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

approximately 15%, from its closing price of $88.49 per share on April 30, 2024, to close at $74.44 per share on May 1, 2024.

6.      The Individual Defendants failed to correct and/or caused the Company to fail to correct these false and misleading statements and omissions of material fact, rendering them personally liable to the Company for breaching their fiduciary duties.

7.      In addition, during the Relevant Period, the Individual Defendants breached their fiduciary duties by causing Starbucks to repurchase its own stock at prices that were artificially inflated due to the foregoing misrepresentations. Indeed, between November 2023 and April 2024, approximately 8.9 million shares of Starbucks common stock were repurchased, costing the Company over $890 million. As the Company's stock was actually worth only $74.44 per share, the price at which it was trading when markets closed on May 1, 2024, the Company overpaid for repurchases of its own stock by over $227.5 million in total.

8.      Additionally, in breach of their fiduciary duties, the Individual Defendants willfully or recklessly caused the Company to fail to maintain adequate internal controls.

9.      The Company has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct.

10.     The Individual Defendants' misconduct has subjected the Company, its former Chief Executive Officer ("CEO"), and its Executive Vice President ("EVP") and Chief Financial Officer ("CFO") to being named as defendants in a federal securities fraud class action lawsuit pending in the United States District Court for the Western District of Washington (the "Securities Class Action").

11.     Moreover, the Company must undertake internal investigations and needs to implement adequate internal controls over its financial reporting.

12.     Due to the Individual Defendants' breaches of fiduciary duties, the Company has been and will continue to be forced to expend millions of dollars.

13.     In light of the breaches of fiduciary duty engaged in by the Individual Defendants,

**BADGLEY MULLINS TURNER** PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

of the collective engagement in fraud and misconduct by the Company's directors, of their being beholden to one another and to various of the Individual Defendants, of their receipt of material personal benefits as a result of the Individual Defendants' misconduct, of the substantial likelihood of the directors' liability in this derivative action and of Defendants Narasimhan's and Ruggeri's liability in the Securities Class Action, and of their not being disinterested and/or independent directors, a majority of the Company's Board cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), Rule 14a-9 of the Exchange Act, 17 C.F.R. § 240.14a-9, Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a) and 78t-1), and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5) promulgated thereunder, and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)). Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

15.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

16.    This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

17.    The Court has personal jurisdiction over each of the Defendants because each Defendant is either a corporation conducting business and maintaining operations in this District, or he or she is an individual who is a citizen of Washington or who has minimum contacts with this District to justify the exercise of jurisdiction over them.

18.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District,

COMPLAINT - 5

one or more of the Defendants either resides or maintains executive offices in this District, Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## PARTIES

### Plaintiff

19.     Plaintiff is a current shareholder of Starbucks. Plaintiff has continuously owned Starbucks common stock since first purchasing the stock on March 3, 2006.

### Nominal Defendant Starbucks

20.     Starbucks is a Washington corporation with its principal executive offices at 2401 Utah Avenue South, Seattle, WA 98134. Starbucks's common stock trades on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "SBUX."

### Defendant Narasimhan

21.     Defendant Narasimhan served as Starbucks's CEO and as a Company director from March 2023 until he stepped down from all of his positions in August 2024. According to the Schedule 14A the Company filed with the SEC on January 25, 2024 (the "2024 Proxy Statement"), as of January 5, 2024, Defendant Narasimhan beneficially owned 39,678 total shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 5, 2024 was $92.99, Defendant Narasimhan owned approximately $3.68 million worth of Starbucks's common stock as of that date.

22.     For the fiscal year ended October 1, 2023 ("2023 Fiscal Year"), Defendant Narasimhan received $14,604,531 in total compensation from the Company, which consisted of $1,275,000 in salary, $9,717,954 in stock awards, $2,885,480 in non-equity incentive plan compensation, and $726,097 in all other compensation.

23.     The 2024 Proxy Statement stated the following about Defendant Narasimhan:

LAXMAN NARASIMHAN joined Starbucks as chief executive officer-elect in October 2022, and assumed the role of chief executive officer in March 2023. Prior

COMPLAINT - 6

to joining Starbucks, Mr. Narasimhan served as Chief Executive Officer of Reckitt Benckiser Group Plc ("Reckitt"), a FTSE 12 listed British multinational consumer health, hygiene, and nutrition company, for three years. Prior to joining Reckitt, Mr. Narasimhan held various roles at PepsiCo, Inc. ("PepsiCo") from 2012 to 2019, including Group Chief Commercial Officer; Chief Executive Officer Latin America, Europe, and Sub-Saharan Africa; Chief Executive Officer Latin America; and Chief Financial Officer of PepsiCo Americas Foods. Prior to joining PepsiCo, Mr. Narasimhan spent 19 years at McKinsey & Company, where he focused on its consumer, retail, and technology practices in the U.S., Asia, and India.

**Defendant Ruggeri**

24.    Defendant Ruggeri has served as the Company's EVP and CFO since February 2021. According to the 2024 Proxy Statement, as of January 5, 2024, Defendant Ruggeri beneficially owned 44,138 total shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 5, 2024 was $92.99, Defendant Ruggeri owned approximately $4.1 million worth of Starbucks's common stock as of that date.

25.    For the 2023 Fiscal Year, Defendant Ruggeri received $6,750,140 in total compensation from the Company, which consisted of $882,182 in salary, $4,584,049 in stock awards, $1,267,364 in non-equity incentive plan compensation, and $16,545 in all other compensation.

26.    The Company's website states the following about Defendant Ruggeri, in relevant part:

Rachel Ruggeri was named executive vice president and chief financial officer in 2021. In this leadership role, Rachel is responsible for the global finance function for Starbucks which includes developing and executing the financial strategies that enable the long-term growth of the company.
Rachel joined Starbucks in 2001 as a member of the accounting team and had the responsibility in her first year of helping to launch the Starbucks Stored Value Card which has since become a significant vehicle of growth for the company.  During her tenure, she has held a variety of finance positions, largely within the US Business, and was promoted to vice president of Corporate Finance and Planning in 2010.  From 2014 to 2016, she was vice president of Finance in support of the

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵀᴴ Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

US Business and from there, she was promoted to senior vice president of Global Retail in 2016. Most recently, she served as the senior vice president of Americas with responsibility for the retail portfolio across the segment including company-operated and licensed/franchised stores. Her proudest moments, however, come from the many opportunities she has had to grow and develop talent within the organization. Though numbers are her business, her passion is in working alongside the talented and inspiring partners within the Starbucks organization.

**Defendant Allison**

27.     Defendant Allison has served as a Company director since September 2019. He also serves as Chair of the Compensation and Management Development Committee ("Compensation Committee") and as a member of the Audit and Compliance Committee ("Audit Committee"). According to the 2024 Proxy Statement, as of January 5, 2024, Defendant Allison beneficially owned 27,440 total shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 5, 2024 was $92.99, Defendant Allison owned approximately $2.5 million worth of Starbucks's common stock as of that date.

28.     For the 2023 Fiscal Year, Defendant Allison received $329,904 in total compensation from the Company, which consisted entirely of stock awards.

29.     The 2024 Proxy Statement stated the following about Defendant Allison:

RICHARD E. ALLISON, JR. served as Chief Executive Officer of Domino's Pizza, Inc., the largest pizza company in the world based on global retail sales, from 2018 until April 2022, then served as a senior advisor until his retirement in July 2022. He joined Domino's in 2011 as Executive Vice President of International and then served as President, Domino's International from 2014 to 2018. During the period that Mr. Allison led the international division and served as Chief Executive Officer, Domino's expanded by more than 20 countries and grew by more than 8,000 stores. Prior to joining Domino's, Mr. Allison worked at Bain & Company, Inc. ("Bain") for more than 13 years, serving as a Partner from 2004 to 2010, and as co-leader of Bain's restaurant practice.

**Defendant Campion**

30.     Defendant Campion has served as a Company director since September 2019. He also serves as Chair of the Audit Committee and as a member of the Compensation Committee.

BADGLEY MULLINS TURNER PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

According to the 2024 Proxy Statement, as of January 5, 2024, Defendant Campion beneficially owned 17,543 total shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 5, 2024 was $92.99, Defendant Campion owned approximately $1.6 million worth of Starbucks's common stock as of that date.

31.    For the 2023 Fiscal Year, Defendant Campion received $339,943 in total compensation from the Company, which consisted entirely of stock awards.

32.    The 2024 Proxy Statement stated the following about Defendant Campion:

> ANDREW CAMPION currently serves as Managing Director of Nike Strategic Business Ventures for Nike, Inc. ("NIKE"), launching and leading new businesses in the broader ecosystem of sport that will generate incremental revenue and enterprise value while expanding on NIKE's brand leadership. Mr. Campion recently announced that he plans to retire from NIKE in April 2024. Previously, Mr. Campion served as NIKE's Chief Operating Officer from 2020 to 2023 and Chief Financial Officer from 2015 to 2020. From 2014 to 2015, he served as Senior Vice President, Strategy, Finance, and Investor Relations for NIKE, which he assumed in addition to his prior role as Chief Financial Officer of the NIKE Brand, to which he was appointed in 2010. Mr. Campion joined NIKE in 2007, leading Global Strategic Planning, Global Financial Planning, and Market Intelligence. The UCLA Anderson School of Management recently announced that Mr. Campion will be the program director of its newly created UCLA Sports Leadership and Management Program. From 1996 to 2007, Mr. Campion held leadership roles in strategic planning, mergers and acquisitions, financial planning and analysis, operations planning, investor relations, and tax at The Walt Disney Company, a multinational mass media and entertainment corporation.

**Defendant Ford**

33.    Defendant Ford has served as a Company director since January 2023. She also serves as Chair of the Environmental, Partner, and Community Impact Committee ("Environmental Committee") and as a member of the Compensation Committee. According to the 2024 Proxy Statement, as of January 5, 2024, Defendant Ford beneficially owned 3,202 total shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 5, 2024 was $92.99, Defendant Ford owned approximately $297,754 worth of Starbucks's common stock as of that date.

BADGLEY MULLINS TURNER PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

34.     For the 2023 Fiscal Year, Defendant Ford received $309,925 in total compensation from the Company, which consisted entirely of stock awards.

35.     The 2024 Proxy Statement stated the following about Defendant Ford:

BETH FORD serves as President and Chief Executive Officer of Land O'Lakes, Inc. ("Land O' Lakes"), a Fortune 200 food production and agribusiness company that is also a century-old farmer-owned cooperative. Land O' Lakes operates Land O'Lakes Dairy Foods, Purina Animal Nutrition, WinField United, and Truterra, and operates in more than 60 countries. Ms. Ford joined Land O' Lakes in 2011 and held a variety of roles across all businesses before becoming chief executive officer in 2018. Ms. Ford's 36-year career spans six industries at seven companies. She was inducted into the Supply Chain Hall of Fame in 2022 by the Council of Supply Chain Management Professionals.

**Defendant Hobson**

36.     Defendant Hobson has served as a Company director since 2005. According to the 2024 Proxy Statement, as of January 5, 2024, Defendant Hobson beneficially owned 722,928 total shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 5, 2024 was $92.99, Defendant Hobson owned approximately $67.2 million worth of Starbucks's common stock as of that date.

37.     For the 2023 Fiscal Year, Defendant Hobson received $494,954 in total compensation from the Company, which consisted entirely of stock awards.

38.     The 2024 Proxy Statement stated the following about Defendant Hobson:

MELLODY HOBSON has served as chair of the board of Starbucks since 2021 and served as vice chair of Starbucks for almost three years before assuming that role. Ms. Hobson has served as Co-CEO, President, and Director of Ariel Investments, LLC ("Ariel Investments"), an investment management firm, since 2019. She previously served as President of Ariel Investments from 2000 to 2019. In addition, she serves as President and Chairman of the Board of Trustees of the Ariel Investment Trust, a registered investment company advised by Ariel Investments. She previously served as Senior Vice President and Director of Marketing at Ariel Capital Management, Inc. from 1994 to 2000, and as Vice President of Marketing at Ariel Capital Management, Inc. from 1991 to 1994.

BADGLEY MULLINS TURNER PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

**Defendant Knudstorp**

39.    Defendant Knudstorp has served as a Company director since 2017. He also serves as Chair of the Nominating and Corporate Governance Committee and as a member of the Audit Committee and the Environmental Committee. According to the 2024 Proxy Statement, as of January 5, 2024, Defendant Knudstorp beneficially owned 81,232 total shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 5, 2024 was $92.99, Defendant Knudstorp owned approximately $7.5 million worth of Starbucks's common stock as of that date.

40.    For the 2023 Fiscal Year, Defendant Knudstorp received $329,904 in total compensation from the Company, which consisted entirely of stock awards.

41.    The 2024 Proxy Statement stated the following about Defendant Knudstorp:

JØRGEN VIG KNUDSTORP has, since September 2023, served as, Special Partner to the LEGO Brand Owner Family of KIRKBI Group, the holding company for Lego Brand and LEGO Group, a privately held, family-owned leading toy manufacturer, with responsibility for brand and business development. From 2017 to 2023, Mr. Knudstorp served as Executive Chairman of the LEGO Brand Group, owner of the LEGO brand. From 2004 to 2016, he served as President and Chief Executive Officer of the LEGO Group. He previously held various leadership positions at the LEGO Group from 2001 to 2004, including Senior Vice President, Corporate Affairs Vice President, Strategic Development Senior Director, Global Strategic Development & Alliance Management; and Director, Strategic Development. Prior to joining the LEGO Group, Mr. Knudstorp served as a Management Consultant at McKinsey & Company, a management consulting firm, from 1998 to 2001.

**Defendant Mohan**

42.    Defendant Mohan has served as a Company director since January 2024. He also serves as a member of the Nominating and Corporate Governance Committee.

43.    The 2024 Proxy Statement stated the following about Defendant Mohan:

NEAL MOHAN has served since 2023 as the Chief Executive Officer of YouTube, which is used by over two billion people across the globe to watch and share video, access information, build community, and shape culture. Mr. Mohan's prior roles at YouTube from 2015 to 2023 included Chief Product Officer, where

BADGLEY MULLINS TURNER PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

he was responsible for YouTube products, user experience, and trust and safety on all platforms and devices globally. Prior to joining YouTube, Mr. Mohan served as Senior Vice President of Display and Video Ads at Google, where he was responsible for advertising offerings. Before joining Google, Mr. Mohan was Senior Vice President of Strategy and Product Development at DoubleClick Inc. ("DoubleClick"), where he rapidly grew the business and helped pioneer the digital marketing industry. He played a critical role in the sale of DoubleClick to Google and subsequently led post-sale integration efforts.

**Defendant Nadella**

44.     Defendant Nadella served as a Company director from 2017 until he resigned on May 30, 2024. According to the 2024 Proxy Statement, as of January 5, 2024, Defendant Nadella beneficially owned 31,083 total shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 5, 2024 was $92.99, Defendant Nadella owned approximately $2.8 million worth of Starbucks's common stock as of that date.

45.     For the 2023 Fiscal Year, Defendant Nadella received $309,925 in total compensation from the Company, which consisted entirely of stock awards.

46.     The 2024 Proxy Statement stated the following about Defendant Nadella:

SATYA NADELLA has served as Chief Executive Officer of Microsoft Corporation, a global technology provider, since 2014 and as Chairman of Microsoft's board of directors since 2021. He joined Microsoft in 1992 and held various leadership positions, including serving as Executive Vice President of the Cloud and Enterprise group. In this role, he led the transformation to the cloud infrastructure and services business. Previously, Mr. Nadella led research and development for the Online Services Division and was Vice President of the Microsoft Business Division. Before joining Microsoft, Mr. Nadella was a member of the technology staff at Sun Microsystems.

**Defendant Servitje**

47.     Defendant Servitje has served as a Company director since January 2024. He also serves as a member of the Environmental Committee.

48.     The 2024 Proxy Statement stated the following about Defendant Servitje:

COMPLAINT - 12

DANIEL JAVIER SERVITJE MONTULL is the President and Chief Executive Officer of Grupo Bimbo SAB de CV, a multinational food company listed on the Mexican Stock Exchange since 1980, which currently has a presence on four continents, employs 148,000 associates, had LTM revenues of $22.3 billion, and holds more than 100 brands and 13,000 different products. Mr. Servitje joined Grupo Bimbo in 1976 and has served as Chief Executive Officer since 1997, and as Chairman of the Board since 2013.

**Defendant Sievert**

49.     Defendant Sievert has served as a Company director since January 2024. He also serves as a member of the Compensation Committee.

50.     The 2024 Proxy Statement stated the following about Defendant Sievert:

MICHAEL SIEVERT has served as the President and Chief Executive Officer of T-Mobile US, Inc. since April 2020. Mr. Sievert's prior roles at T-Mobile included President and Chief Operating Officer from June 2018 to April 2020, Chief Operating Officer from 2015 to 2018, and Executive Vice President and Chief Marketing Officer from 2012 to 2015. Prior to his time with T-Mobile, Mr. Sievert was Chief Executive Officer at Discovery Bay Games, Inc. in 2012 and Chief Commercial Officer of Clearwire Corporation from 2009 to 2011. Mr. Sievert co-founded and was the Chief Executive Officer of Switch box Labs, Inc., which was acquired by Lenovo Group Limited in 2009. Prior to founding Switch box Labs, he held various marketing and branding roles for Microsoft Corporation; AT&T, Inc.; E*Trade Financial; International Business Machines Corporation; and The Procter & Gamble Company.

**Defendant Zhang**

51.     Defendant Zhang has served as a Company director since October 2023. She also serves as a member of the Audit Committee and the Nominating and Corporate Governance Committee. According to the 2024 Proxy Statement, as of January 5, 2024, Defendant Zhang beneficially owned 1,810 total shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on January 5, 2024 was $92.99, Defendant Zhang owned approximately $168,312 worth of Starbucks's common stock as of that date.

52.     For the 2023 Fiscal Year, Defendant Zhang received $164,286 in total

**BADGLEY MULLINS TURNER** PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

compensation from the Company, which consisted entirely of stock awards.

53.    The 2024 Proxy Statement stated the following about Defendant Zhang:

WEI ZHANG served as Senior Advisor and President of Alibaba Pictures Group, leading global operations since its formation, from 2014 until her retirement in 2021. She joined Alibaba Group in 2008 as Senior Vice President of Corporate Development and spent the next six years in strategic investment and M&A, corporate strategy, and corporate social responsibility roles. Prior to joining Alibaba, Ms. Zhang was Chief Operating Officer of Star China from 2005 to 2008, overseeing day to day operations of News Corp's China subsidiary. She was Managing Director of CNBC China from 2002 to 2005 and held positions at Bain and General Electric before that.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

54.    By reason of their positions as officers and directors and/or fiduciaries of Starbucks and because of their ability to control the business and corporate affairs of Starbucks, the Individual Defendants owed Starbucks and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Starbucks in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Starbucks and its shareholders so as to benefit all shareholders equally.

55.    Each director and officer of the Company owes to Starbucks and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

56.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of Starbucks, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

57.    To discharge their duties, the officers and directors of Starbucks were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

58.    Each Individual Defendant, by virtue of their position as a director and/or officer,

BADGLEY MULLINS TURNER PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Starbucks, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised the Company's Board at all relevant times.

59.     As senior executive officers and/or directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, including the dissemination of false information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information. Further, they had a duty to ensure the Company remained in compliance with all applicable laws.

60.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Starbucks were required to, among other things:

COMPLAINT - 15

(a)    ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Washington and the United States, and pursuant to Starbucks's corporate governance and applicable codes of conduct and/or ethics;

(b)    conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)    remain informed as to how Starbucks conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)    establish and maintain systematic and accurate records and reports of the business and internal affairs of Starbucks and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)    maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Starbucks's operations would comply with all applicable laws and Starbucks's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)    exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)    refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)    examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth

COMPLAINT - 16

above.

61.     Each of the Individual Defendants further owed to Starbucks and the shareholders the duty of loyalty requiring that each favor Starbucks's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

62.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Starbucks and were at all times acting within the course and scope of such agency.

63.     Because of their advisory, executive, managerial, directorial, and controlling shareholder positions with Starbucks, each of the Individual Defendants had access to adverse, nonpublic information about the Company.

64.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Starbucks.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

65.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

66.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, and waste of corporate assets; (ii) conceal adverse information concerning the Company's operations, financial condition, legal compliance, future business prospects, and internal controls; and (iii) artificially inflate the Company's stock price.

67.     The Individual Defendants accomplished their conspiracy, common enterprise,

**BADGLEY MULLINS TURNER** PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

and/or common course of conduct by causing the Company purposefully or recklessly to conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants who is or was a director of Starbucks was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

68.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted in the accomplishment of that wrongdoing, and was or should have been aware of his overall contribution to and furtherance of the wrongdoing.

69.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Starbucks and was at all times acting within the course and scope of such agency.

## STARBUCKS'S CODE OF CONDUCT AND CORPORATE GOVERNANCE

### Starbucks's Standards of Business Conduct

70.    Starbucks's Standards of Business Conduct (the "Code of Conduct") states that the Code exists for the following reasons:

> • *The Standards help us make decisions in our daily work*
>
> • *The Standards demonstrate that we take our legal and ethical responsibilities seriously[2]*

71.    The Code of Conduct also provides that it "appl[ies] to all partners, officers, and

---

[2] All emphasis has been added unless otherwise referenced herein.

COMPLAINT - 18

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵀᴴ Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

board of directors, as well as temporary service workers and independent contractors."

72.    Under the heading "Conflicts of Interest," the Code of Conduct states:

We all must avoid conflicts of interest. A conflict of interest exists when a personal interest or activity interferes or appears to interfere with the duties that you perform at, or owe to, Starbucks. A conflict of interest may unconsciously influence even the most ethical person and the mere appearance of a conflict may cause a partner's acts or integrity to be questioned. In addition to annual disclosure, potential conflicts of interest must be disclosed to the partner's manager or the vice president in charge of the partner's department or business unit, who will contact the chief ethics and compliance officer (CECO). If preferred, disclosure can be made directly to the CECO via Ethics & Compliance. Members of the Board of Directors should disclose actual, potential or apparent conflicts of interest to the Chair of the Audit & Compliance Committee.

73.    Under the heading "Securities," the Code of Conduct states:

Securities

As a partner, you may become aware of significant and confidential information about Starbucks business, often called "material non-public information." Partners may not buy or sell stock (including by cashless exercise of stock options) or any other security while in possession of this information. In order to avoid any potential problems, you should interpret the term "material nonpublic information" broadly. Some examples of material information include: • Financial information • The development of new products or services • A proposed acquisition, joint venture or merger • Government investigations • Changes in key personnel Information is considered to be non-public unless it has been adequately disclosed to the public. Examples of effective disclosure include public filings with securities regulatory authorities and the issuance of company press releases. There also must be adequate time for the market to digest the information. Starbucks requires that the information must be publicly available for at least one full business day before you may trade in Starbucks securities. Directors, certain executives and partners with regular access to material non-public information also may not trade during the blackout periods established by Starbucks. For more information, refer to the Insider Trading Policy, which can be obtained by contacting Ethics & Compliance.

74.    Under the heading "Compliance with Laws and Regulations," the Code of Conduct states, in relevant part, that:

Starbucks is committed to full compliance with the laws, rules and regulations of the countries in which it operates. You must comply with all applicable laws, rules and regulations when performing your duties. When you think a conflict exists

BADGLEY MULLINS TURNER PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

between the Standards and an applicable law, rule or regulation, or if you have a question concerning the legality of your or other partners' conduct, you should consult with your manager or Ethics & Compliance.

75.    In violation of the Code of Conduct, the Individual Defendants (as key officers and members of the Company's Board) caused the Company to issue materially false and misleading statements to the public, facilitated and disguised the Individual Defendant's violations of law, including breaches of fiduciary duty, gross mismanagement, abuse of control, waste of corporate assets, unjust enrichment, and aiding and abetting thereof. Also, in violation of the Code of Conduct, the Individual Defendants failed to comply with laws and regulations and conduct business in an honest and ethical manner, and properly report violations of the Code of Conduct.

***Starbucks's Audit Committee Charter***

76.    The Audit Committee Charter states that the purpose of the Audit Committee is as follows:

> The Audit and Compliance Committee (the "Committee") is responsible for overseeing the accounting and financial reporting processes of Starbucks Corporation (the "Company") and the internal and external audit processes. The Committee also assists the Board of Directors (the "Board") of the Company in fulfilling its oversight responsibilities by reviewing the financial information that will be provided to shareholders and others, the systems of internal control that management and the Board have established, the Company's risk management practices and compliance with the Company's Standards of Business Conduct, the Code of Ethics for the CEO, COO, CFO and Finance Leaders, the Policy for the Review and Approval of Related Person Transactions Required to be Disclosed in Proxy Statements and such other duties as directed by the Board. In fulfilling its purpose, it is the responsibility of the Committee to provide an open avenue of communication between the Board and management, the internal audit department and the Company's independent auditors (the "independent auditors"). The Committee is the Board's principal agent in ensuring the integrity of management and the adequacy of disclosure to shareholders. The opportunity for the independent auditors to meet with the entire Board as needed is not to be restricted, however. The independent auditors are ultimately accountable to the Committee, as representatives of the Company's shareholders; the Committee has the sole authority to determine funding for, select, evaluate and, where appropriate, replace the independent auditors. The Committee oversees the independent auditors, including their independence and objectivity.

**BADGLEY MULLINS TURNER** PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

77.     Under a section titled "Authority," the Audit Committee Charter states:

The Committee has the authority necessary to discharge its duties and responsibilities, including to inquire about any activity of the Company within its scope of responsibilities, and will have unrestricted access to members of management and all information relevant to its responsibilities. All Company partners (employees) will assist as requested by members of the Committee, and the Committee will have access to the Company's books, records, facilities and personnel. The Committee has the authority and is empowered to: (a) retain independent legal counsel and other advisors as it deems necessary or appropriate to assist the Committee in fulfilling its responsibilities; (b) communicate directly with the independent auditors and instruct the independent auditors to report directly to the Committee any serious difficulties or disputes with management, and ensure they are appropriately resolved; and (c) approve the fees and other retention terms of such advisors, the fees for all audit, review and attest services of the independent auditors and the ordinary administrative expenses of the Committee that are necessary or appropriate in carrying out its duties. The Committee is empowered to form and delegate responsibilities to subcommittees of the Committee, as may be necessary or appropriate.

78.     The Audit Committee Charter also states that it is the responsibility of the Audit Committee to "[s]elect, appoint, determine funding and other retention terms for, oversee and, if the Committee determines necessary or appropriate, replace, the independent auditors" and "[r]eview the Company's quarterly and annual financial results with management and the independent auditors[.]"

79.     In violation of the Audit Committee Charter, the Individual Defendants sitting on the Audit Committee (as key officers and members of the Company's Board) caused the Company to issue materially false and misleading statements to the public, facilitated and disguised the Individual Defendants' violations of law, including breaches of fiduciary duty, gross mismanagement, abuse of control, waste of corporate assets, unjust enrichment, and aiding and abetting thereof. Also, in violation of the Audit Committee Charter, the Individual Defendants failed to implement risk assessment and risk management protocol and failed to ensure the Company's compliance with applicable law.

COMPLAINT - 21

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵀᴴ Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

## INDIVIDUAL DEFENDANTS' MISCONDUCT

### False and Misleading Statements

***November 2, 2023 Press Release***

80.     On November 2, 2023, the Company issued a press release that reported the Company's preliminary financial performance for the fourth quarter and full 2023 Fiscal Year, stating the following, in relevant part:

> Global comparable store sales increased 8%, driven by a 5% increase in average ticket and 3% increase in comparable transactions; North America and U.S. comparable store sales increased 9%, driven by a 6% increase in average ticket and 3% increase in comparable transactions; International comparable store sales increased 5%, driven by a 5% increase in comparable transactions; China comparable store sales increased 2%, driven by a 4% increase in comparable transactions and 2% decline in average ticket; Consolidated net revenues up 12%, to a record $36.0 billion, or 14%, excluding a 2% unfavorable impact from foreign currency translation…GAAP earnings per share of $3.58 grew 27% over prior year Non-GAAP earnings per share of $3.54 grew 20% over prior year.

81.     The press release also quoted Defendant Narasimhan, who boasted of the Company's "strong" fourth quarter and full fiscal year, stating:

> We finished our fourth quarter and full fiscal year strong, delivering on the higher end of our full-year guidance. Our Reinvention is moving ahead of schedule, fueling revenue growth, efficiency and margin expansion…Notably, we continue to see the positive impact of our Reinvention on our partner and customer experiences, proof points that we can continue to create, grow and strengthen our business while creating value for all. As we enter the current year, in the face of macro uncertainty, we remain confident in the momentum throughout our business and headroom globally. We expect sustained momentum throughout the company for years to come.

82.     Also in the press release, Defendant Ruggeri similarly touted the Company's performance for the 2023 Fiscal Year, stating:

> Our strong full fiscal year 2023 performance demonstrated our durable long-term growth and Reinvention plan execution… We are proud that our full fiscal year 2024 guidance will be grounded on a balance of both revenue growth and margin expansion.

83.     The same day, the Company hosted an earnings call to discuss its guidance for

COMPLAINT - 22

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵀᴴ Ave. W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

2024. On the call, Defendant Ruggeri stated:

> First, let me start with the foundation of our growth, comparable sales growth. We expect fiscal year 2024 global comp growth to be 5% to 7%...For color, our fiscal year 2024 U.S. comparable store sales are expected to grow in the range of 5% to 7% as our business continues to have substantial headroom spurred by our leading innovation and technology, increasing customer loyalty and strong digital engagement as evidenced by the U.S. finishing fiscal year 2023 with strong performance of 9% comp growth. Another positive driver of our fiscal year 2024 5% to 7% global comp growth is the performance in China, with comp expected to be in the range of 4% to 6% in Q2 through Q4, with a higher comp in Q1 as we lap prior year mobility restrictions. Such growth is fueled by our increasing digital capability, coupled with the local opportunity we see stemming from our relevant product innovation and purpose-designed stores, which are resonating with customers and driving engagement…Next, in thinking of our global new store growth, we expect global new store growth of approximately 7%, with approximately 75% of the growth still coming from outside of the U.S. as we continue to focus on our strategic global expansion, reaching nearly 41,000 stores globally by the end of fiscal year 2024. Of the approximate 7% growth, we expect our U.S. store count to grow by approximately 4% in fiscal year 2024, driven by our dynamic portfolio format, expanding our white space opportunity.

84.    During the question-and-answer segment of the call, Defendants stated the following about the Company's performance in its markets overseas:

> <Q: Sara Harkavy Senatore - Bank of America – Analyst - I had a question about China, please, which I think we've heard the competitive environment there very intense. And I was just curious if that was perhaps some of what we saw in terms of positive traffic, but perhaps a negative ticket, and then some of the investments you're making and perhaps that might be gating factors for margin expansion? The positive same-store sales, I think, certainly suggests that your business is executing well. But just trying to get a read on competitive intensity and maybe implications for new unit economics and the margin structure for the business going forward.
>
> <A: Laxman Narasimhan> Our brand in China is known as [Shing Baka] and it uplifts every day for millions of customers in China. And as Rachel said, our business is also strong, 5% comp in Q4. If you look at the first half of the year versus the second half of the year, the growth difference in the second half was 20% higher than the first. One thing you should know is that if you just look at the morning daypart, the morning daypart for our business in China now is higher than it was pre-COVID.
>
> We have very strong local innovation. And to answer your question, if you look at the transactions that Rachel mentioned, we're very comfortable with the food and

BADGLEY MULLINS TURNER PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

beverage transactions. And what we see there, including the price realization that we have, the ticket that you mentioned specifically points to merchandise and what we had in the store, which we are still working through. But we feel very good about the competitive position of beverages, the competitive position of food. We feel very good about the cash returns of the stores that we are opening. They're very strong. The team has done a wonderful job in ensuring that the cost of builds are low, with the productivity that we have been able to accomplish in our stores. We feel good about the overall returns that we are getting there. And I'm heartened by the -- by how the business is coming together despite all the headwinds that have been there for the last couple of years.

***2024 Proxy Statement***

85.     On January 25, 2024, the Company filed the 2024 Proxy Statement with the SEC. The 2024 Proxy Statement was solicited by Defendants Allison, Campion, Ford, Hobson, Knudstorp, Mohan, Nadella, Narasimhan, Servitje, Sievert, and Zhang pursuant to Section 14(a) of the Exchange Act and contained various materially false and misleading statements and omissions.

86.     The 2024 Proxy Statement called for shareholders to approve, *inter alia*: (1) the reelection of Defendants Allison, Campion, Ford, Hobson, Knudstorp, Mohan, Nadella, Narasimhan, Servitje, Sievert, and Zhang to the Board; (2) the ratification of Deloitte & Touche LLP as the Company's independent registered public accounting firm for the 2024 Fiscal Year; and (3) the compensation paid to the Company's named executive officers, on a nonbinding, advisory basis.

87.     Regarding "Risk Oversight by the Board," the 2024 Proxy Statement stated the following, in relevant part:

> The board has ultimate responsibility for risk oversight. We believe that a fundamental part of risk oversight is not only understanding the material risks a company faces and the steps management is taking to manage those risks, but also understanding what level of risk is appropriate for that company. The involvement of the board in reviewing Starbucks business strategy is an integral aspect of the board's assessment of management's tolerance for risk and its determination of what constitutes an appropriate level of risk for Starbucks.

COMPLAINT - 24

BADGLEY MULLINS TURNER PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

While the full board has ultimate responsibility for risk oversight, the board has delegated oversight responsibility for certain risks to the Audit Committee, the Compensation Committee, the Impact Committee, and the Nominating/Governance Committee. This approach allows the board to draw upon the experience and judgment of specific directors comprising each committee who have experience overseeing and managing particular risks that Starbucks faces in various areas of its business. Starbucks ERM program is designed to identify, assess, and prioritize Starbucks critical risk exposures to its business operations across various time frames, from the short-term to the long-term, and throughout the world. Risks are evaluated based on their potential magnitude, likelihood, and immediacy and are monitored over time to ensure risk profile changes are evaluated in a timely manner for existing and emergent risks.

The committees of the board play a key role in the board's risk oversight responsibility. Each of our board committees is authorized by its charter to consult at its discretion with any experts or advisors that committee members feel would be helpful. All committees receive regular reports from management responsible for monitoring and mitigating particular risk exposures as part of the ERM program, and the committee chairs provide regular reports to the full board on relevant areas of oversight.

The board believes that its leadership structure, coupled with the structure and work of the various committees described below, is appropriate and effective in facilitating board-level risk oversight.

88.     The 2024 Proxy Statement was materially false and misleading because, despite assertions to the contrary, the Board was not adequately performing its risk oversight functions.

89.     The 2024 Proxy Statement was also false and misleading because it failed to disclose that: (1) Defendants did not possess reliable information with respect to Starbucks's projected revenue outlook and anticipated growth; (2) Defendants minimized the risk that Starbucks faced from seasonality and growth in foreign markets, especially China; and (3) because it was unable to handle the existing macro uncertainty and competition, particularly in the Chinese market, the Company's Reinvention platform failed to meet the Company's stated measures. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

90.     As a result of Defendants Allison, Campion, Ford, Hobson, Knudstorp, Mohan,

COMPLAINT - 25

Nadella, Narasimhan, Servitje, Sievert, and Zhang causing the 2024 Proxy Statement to be false and misleading, Company shareholders voted, *inter alia*, to reelect Defendants Allison, Campion, Ford, Hobson, Knudstorp, Mohan, Nadella, Narasimhan, Servitje, Sievert, and Zhang to the Board, thereby allowing them to continue breaching their fiduciary duties to the Company.

### *January 30, 2024 Press Release*

91.    On January 30, 2024, the Company announced its financial results for the first quarter of 2024 and reduced its projections for the full year. In discussing the disappointing results, Defendant Narasimhan stated:

> Our first quarter performance was strong on many measures. Of note was the unwavering commitment of our most loyal customers, the growth in rewards members, tender and spend per member . . . Despite headwinds, our brand is very strong, and that coupled with innovation and a relentless focus on our green apron partners form long-term differentiators, along with focused execution on Triple Shot Reinvention, will drive balanced and attractive earnings growth. . . . I am proud of the significant margin expansion and double-digit earnings growth we delivered in our first quarter, as it underscores our multiple paths to earnings growth. We are executing on several levers within those multiple paths to continue delivering against our balanced growth model over the remainder of the year.

92.    During an earnings call the same day, Defendant Narasimhan continued to discuss these results, boasting of Starbucks's purported success in its Reinvention plan and growth in China, while detailing the Company's plans for growth moving forward. In relevant part, he stated:

> Let me walk you through the details. Our performance in the quarter was fundamentally strong. Our Q1 total company revenue was a record $9.4 billion, up 8% year-over-year. Our global comparable store sales grew 5% year-over-year, supported by a 5% comp growth in North America, driven by 4% ticket growth and 10% comp growth in China. Our global operating margins expanded by 130 basis points to 15.8% and our overall earnings per share grew 20% to $0.90. ***This speaks to the continued successful execution of our reinvention plan and the durable business we are building.***
>
> . . .
>
> We're focused on unlocking $3 billion in efficiencies, and I'm pleased to say that we're making steady progress. Our Triple Shot Reinvention efforts delivered 130 basis points of margin expansion in the first quarter of the fiscal year. As you heard

COMPLAINT - 26

**BADGLEY MULLINS TURNER** PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

me say often, the key to our success is the experience that our partners create for our customers. We're investing in a better experience for our partners to advance our business to a more balanced growth model as we unlock efficiency. ***In the quarter, we have seen the effectiveness of the Reinvention driven investments we have made in in-store operational efficiencies such as standards, equipment innovation and scheduling improvements, leading to a more stable environment for our partners***.

…

***We also saw great momentum in China***. We aim to be the best in the premium market in China. Our brand equity across Starbucks and Starbucks Reserve is second to none. Based on our latest brand tracker, Starbucks continues to be the first choice in away-from-home coffee, including among the Gen Z consumers. We continue to lead in brand affinity and have a highest awareness, brand familiarity and purchase intent scores. We have the most outstanding partners in our stores with very strong customer connection and the highest retention rates in our industry. We offer distinctive global and locally relevant product innovation anchored on superior coffee with food attachments and a morning daypart that now have surpassed pre-COVID levels.

Our loyal customers, a major part of tender, are coming more often and our loyalty program is growing. We're doing all of this while offering premium physical and digital experiences delivered across our distinctive store portfolio across other physical channels and through our digital connection and doing so at a commensurate value. This ambition of being best in premium in China is in line with our long-term growth ambitions for China.

. . .

There are 3 key elements in our China strategy.

First, we are offering more coffee forward, locally relevant product innovations and we're increasing engagement in social media channels to influencers and partnerships, which are highly effective in China. These actions are increasing awareness and have led to greater customer frequency.

Second, we have made significant investments in technology, increasing our omnichannel capability, allowing us to serve more customers through new occasions. These investments have also led to a more digitized store environment, increasing efficiency of our supply chain and stores while enhancing the partner experience and strengthening our unit economics in both existing and new stores.

Finally, we're increasing the percentage of new stores opening in lower tier markets and new county cities where we see meaningfully stronger new store economics. As you can see, we moved quickly to respond and implement a plan to address these unexpected headwinds. It will take time for these action plans to be

COMPLAINT - 27

**BADGLEY MULLINS TURNER** PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

fully realized. That said, we remain confident in our Triple Shot strategy and our long-term growth. So let me share some of the progress in the quarter.

Our first Triple Shot Reinvention priority is to elevate our brand by operating great stores and driving product innovation. The best lever for elevating our brand is our store experience. We continue to raise the bar on running great stores with a focus on enhancing both our partner and customer experience.

93.     The statements referenced in ¶¶80-84 and 91-92 were materially false and misleading and failed to disclose material facts necessary to make the statements made not false and misleading. Specifically, the Individual Defendants failed to disclose, *inter alia*, that: (1) Defendants did not possess reliable information with respect to Starbucks's projected revenue outlook and anticipated growth; (2) Defendants minimized the risk that Starbucks faced from seasonality and growth in foreign markets, especially China; and (3) because it was unable to handle the existing macro uncertainty and competition, particularly in the Chinese market, the Company's Reinvention platform failed to meet the Company's stated measures. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

### April 30, 2024 Press Release

94.     On April 30, 2024, the truth emerged when Starbucks issued a press release that revealed the Company's poor financial performance for the second quarter of 2024. In relevant part, the press release revealed that the Company's store sales declined globally 4%, with traffic falling 7%, and further disclosed a 2% decline in new revenues to $8.6 billion. In addition, Starbucks lowered its guidance for the 2024 Fiscal Year and reasoned that this decision was based off of global declines in store sales, net revenues, and both GAAP and non-GAAP earnings. The press release stated:

Global comparable store sales declined 4%, driven by a 6% decline in comparable transactions, partially offset by a 2% increase in average ticket; Consolidated net revenues declined 2%, to $8.6 billion, or a 1% decline on a constant currency basis;

COMPLAINT - 28

GAAP operating margin contracted 240 basis points year-over-year to 12.8%, primarily driven by deleverage, incremental investments in store partner wages and benefits, increased promotional activities, lapping the gain on the sale of Seattle's Best Coffee brand, as well as higher general and administrative costs primarily in support of Reinvention; GAAP earnings per share of $0.68 declined 14% over prior year; Non-GAAP earnings per share of $0.68 declined 8% over prior year, or declined 7% on a constant currency basis.

95.    After Starbucks issued the press release, Defendants Narasimhan and Ruggeri both issued statements with respect to the difficulties and challenges that the Company was facing. Defendant Narasimhan stated the following, in relevant part:

In a highly challenged environment, this quarter's results do not reflect the power of our brand, our capabilities or the opportunities ahead. It did not meet our expectations, but we understand the specific challenges and opportunities immediately in front of us. We have a clear plan to execute and the entire organization is mobilized around it. We are very confident in our long-term and know that our Triple Shot Reinvention with Two Pumps strategy will deliver on the limitless potential of this brand.

96.    Similarly, Defendant Ruggeri stated:

While it was a difficult quarter, we learned from our own underperformance and sharpened our focus with a comprehensive roadmap of well thought out actions making the path forward clear. On this path, we remain committed to our disciplined approach to capital allocation as we navigate this complex and dynamic environment.

97.    Also on April 30, 2024, the Company hosted an earnings call with investors and analysts, during which Defendant Ruggeri stated the following, in relevant part:

Still, we face a challenging operating environment. Headwinds discussed last quarter have continued. In a number of key markets, we continue to feel the impact of a more cautious consumer, particularly with our more occasional customer, and a deteriorating economic outlook has weighed on customer traffic, an impact felt broadly across the industry. In the U.S., severe weather impacted both our U.S. and total company comp by nearly 3% during the quarter. The remainder of our challenges were attributable to fewer visits from our more occasional customers.

Turning elsewhere. We still see economic volatility in the Middle East, but we remain confident in the region's long-term growth opportunities. In China, we still see the effects of a slower-than-expected recovery, and we see fierce competition among value players in the market. But we are strengthening our premium

COMPLAINT - 29

position, and our team in China continues to execute with terrific rigor and heart as the market shakeout continues and as demand recovers and matures.

None of these realities are excuses. Some, like weather, are transitory. Others, like a more cautious consumer, may persist longer, but much is within our control. There are 3 execution opportunities in our U.S. business I want to expand on: first, meet the demand we have across dayparts to drive future growth; second, launch even more exciting and relevant new products while maintaining our focus on core coffee forward offerings; and third, reach and demonstrate more value for our occasional and non-Starbucks Rewards customers.

98.     During the call, Defendant Narasimhan was also questioned by an analyst for Bank of America:

<Q: Sara Harkavy Senatore – Bank of America – Analyst - The first is that you talked about weather as a headwind, and then you said that lavender latte in the quarter was one of the strongest launches you've had similar to PSL. But your exit rate -- it sounds like you're saying your exit rate was largely unchanged. So I'm trying to reconcile what would appear to have been headwinds that aren't reoccurring and then very successful innovation with the guidance and the exit rates.>

<A: CEO Narasimhan - Let me address both of them by pointing to the underlying pressures that we see consumers face just in terms of what they have available to spend. So there's no question that if you take some of these transitory headwinds out, which, of course, are not an excuse in any way, and you look at the underlying headwinds particularly around the pressures that consumers face particularly with the occasional customer, what we're seeing is that's where the challenge is. It's a challenge with their traffic and it's their challenge with them coming into our stores.>

99.     On this news, the price of the Company's common stock fell $14.05 per share, or approximately 15%, from its closing price of $88.49 per share on April 30, 2024, to close at $74.44 per share on May 1, 2024.

100.     Analysts responded negatively to these disclosures, with Deutche Bank reporting on May 1, 2024 stating, with respect to Starbucks's business in China, that "China remains weak amidst a cautious consumer backdrop and increasing competitive intensity, and the trimmed unit growth guide likely adds to concerns on the growth outlook."

COMPLAINT - 30

BADGLEY MULLINS TURNER PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

## REPURCHASES DURING THE RELEVANT PERIOD

101.     During the Relevant Period, the Individual Defendants caused the Company to initiate repurchases of its common stock that substantially damaged the Company. In total, the Company spent an aggregate amount of over $890 million to repurchase approximately 8.9 million shares of its own common stock at artificially inflated prices from November 2023 through April 2024.

102.     According to the Form 10-Q the Company filed with the SEC on January 30, 2024 ("1Q24 10-Q"), between October 30, 2023 and November 26, 2023,[3] the Company repurchased 4,146,201 shares of its own common stock at an average price per share of approximately $101.31, for a total cost to the Company of approximately $420.1 million.

103.     As the Company's stock was actually worth only $74.44, the price at closing on May 1, 2024, the Company overpaid by approximately $111.4 million for repurchases of its own stock between October 30, 2023 and November 26, 2023.

104.     According to the 1Q24 10-Q, between November 27, 2023 and December 31, 2023, the Company repurchased 4,754,654 shares of its own common stock at an average price per share of approximately $98.86, for a total cost to the Company of approximately $470 million.

105.     As the Company's stock was actually worth only $74.44, the price at closing on May 1, 2024, the Company overpaid by approximately $116.1 million for repurchases of its own stock between November 27, 2023 and December 31, 2023.

106.     Thus, in total, during the Relevant Period, the Company overpaid for repurchases of its own stock by **_over $227.5 million_**.

## DAMAGES TO STARBUCKS

107.     As a direct and proximate result of the Individual Defendants' misconduct, Starbucks has lost and expended, and will continue to lose and expend, many millions of dollars.

108.     Such expenditures include, but are not limited to, legal fees, costs, and any

---

[3] Upon information and belief, these repurchases occurred during the Relevant Period.

COMPLAINT - 31

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵀᴴ Ave. W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

payments for resolution of or to satisfy a judgment associated with the Securities Class Action, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

109.    Such expenditures include the amounts that the Individual Defendants caused the Company to overpay for repurchases of its own stock while the stock price was artificially inflated as a result of the false and misleading statements alleged herein.

110.    Such expenditures also include, but are not limited to, fees, costs, and any payments for resolution of or to satisfy judgments associated with any other lawsuits filed against the Company or the Individual Defendants based on the misconduct alleged herein, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

111.    Such expenditures will also include costs incurred in any internal investigations pertaining to violations of law, costs incurred in defending any investigations or legal actions taken against the Company due to its violations of law, and payments of any fines or settlement amounts associated with the Company's violations.

112.    Such losses include the Company's overpayment of over $227.5 million for repurchases of its own stock during the period when the Company's stock price was artificially inflated due to the false and misleading statements discussed above.

113.    Additionally, these expenditures include, but are not limited to, unjust compensation, benefits, and other payments provided to the Individual Defendants who breached their fiduciary duties to the Company.

114.    As a direct and proximate result of the Individual Defendants' conduct, Starbucks has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's and their misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE ALLEGATIONS

115.    Plaintiff brings this action derivatively and for the benefit of Starbucks to redress

COMPLAINT - 32

injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Starbucks, violations of the Exchange Act, unjust enrichment, abuse of control, gross mismanagement, and waste of corporate assets.

116.    Starbucks is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

117.    Plaintiff is, and has been at all relevant times, a shareholder of Starbucks. Plaintiff will adequately and fairly represent the interests of Starbucks in enforcing and prosecuting his rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

118.    Plaintiff incorporates by reference and realleges each and every allegation stated above as if fully set forth herein.

119.    A pre-suit demand on the Board is futile and, therefore, excused. At the time of filing of this action, the Board consists of the following ten individuals: Defendants Allison, Campion, Ford, Hobson, Knudstorp, Mohan, Servitje, Sievert, and Zhang (the "Director-Defendants") and non-party Brian Niccol (collectively with the Director-Defendants, the "Directors"). Plaintiff needs only to allege demand futility as to five of the ten Directors who are on the Board at the time this action is commenced.

120.    Demand is excused as to all of the Director-Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause the Company to make false and misleading statements and omissions of material facts, and, at the same time, to cause the Company to overpay by over $227.5 million for repurchases of its own stock, all of which renders the Director-Defendants unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

121.    In complete abdication of their fiduciary duties, the Director-Defendants either

COMPLAINT - 33

knowingly or recklessly caused or permitted Starbucks to issue materially false and misleading statements. Specifically, the Director-Defendants caused Starbucks to issue false and misleading statements which were intended to make Starbucks appear more profitable and attractive to investors. Moreover, the Director-Defendants caused the Company to fail to maintain internal controls. As a result of the foregoing, the Director-Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

122.    Additional reasons that demand on Defendant Allison is futile follow. Defendant Allison has served as a Company director since September 2019 and also serves as the Chair of the Compensation Committee and as a member of the Audit Committee. Defendant Allison received and continues to receive handsome compensation for his role as a Company director. In addition, Defendant Allison solicited the false and misleading 2024 Proxy Statement, which led to the reelection of the Director-Defendants to the Board, allowing them to continue breaching their fiduciary duties to the Company. As a trusted-long time Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons, too, Defendant Allison breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

123.    Additional reasons that demand on Defendant Campion is futile follow. Defendant Campion has served as a Company director since September 2019 and also serves as the Chair of the Audit Committee and as a member of the Compensation Committee. Defendant Campion received and continues to receive handsome compensation for his role as a Company director. In addition, Defendant Campion solicited the false and misleading 2024 Proxy Statement, which led to the reelection of the Director-Defendants to the Board, allowing them to continue breaching

COMPLAINT - 34

their fiduciary duties to the Company. As a trusted-long time Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons, too, Defendant Campion breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

124.    Additional reasons that demand on Defendant Ford is futile follow. Defendant Ford has served as a Company director since 2023 and also serves as the Chair of the Environmental Committee and as a member of the Compensation Committee. Defendant Ford received and continues to receive handsome compensation for her role as a Company director. In addition, Defendant Ford solicited the false and misleading 2024 Proxy Statement, which led to the reelection of the Director-Defendants to the Board, allowing them to continue breaching their fiduciary duties to the Company. As a trusted-long time Company director, she conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded her duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. For these reasons, too, Defendant Ford breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

125.    Additional reasons that demand on Defendant Hobson is futile follow. Defendant Hobson has served as a Company director since 2005. Defendant Hobson received and continues to receive handsome compensation for her role as a Company director. In addition, Defendant Hobson solicited the false and misleading 2024 Proxy Statement, which led to the reelection of the Director-Defendants to the Board, allowing them to continue breaching their fiduciary duties to the Company. As a trusted-long time Company director, she conducted little, if any, oversight

BADGLEY MULLINS TURNER PLLC
19910 50ᵀᴴ Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

1
2
3
4
5

of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded her duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. For these reasons, too, Defendant Hobson breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

6
7
8
9
10
11
12
13
14
15
16
17
18

126.    Additional reasons that demand on Defendant Knudstorp is futile follow. Defendant Knudstorp has served as a Company director since 2017 and also serves as the Chair of the Nominating and Corporate Governance Committee and as a member of the Audit Committee and the Environmental Committee. Defendant Knudstorp received and continues to receive handsome compensation for his role as a Company director. In addition, Defendant Knudstorp solicited the false and misleading 2024 Proxy Statement, which led to the reelection of the Director-Defendants to the Board, allowing them to continue breaching their fiduciary duties to the Company. As a trusted-long time Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons, too, Defendant Knudstorp breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

19
20
21
22
23
24
25
26

127.    Additional reasons that demand on Defendant Mohan is futile follow. Defendant Mohan has served as a Company director since January 2024 and also serves as a member of the Nominating and Corporate Governance Committee. Defendant Mohan received and continues to receive handsome compensation for his role as a Company director. In addition, Defendant Mohan solicited the false and misleading 2024 Proxy Statement, which led to the reelection of the Director-Defendants to the Board, allowing them to continue breaching their fiduciary duties to the Company. As a trusted-long time Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously

BADGLEY MULLINS TURNER PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons, too, Defendant Mohan breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

128.    Additional reasons that demand on Defendant Servitje is futile follow. Defendant Servitje has served as a Company director since January 2024 and also serves as a member of the Environmental Committee. Defendant Servitje received and continues to receive handsome compensation for his role as a Company director. In addition, Defendant Servitje solicited the false and misleading 2024 Proxy Statement, which led to the reelection of the Director-Defendants to the Board, allowing them to continue breaching their fiduciary duties to the Company. As a trusted-long time Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons, too, Defendant Servitje breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

129.    Additional reasons that demand on Defendant Sievert is futile follow. Defendant Sievert has served as a Company director since January 2024 and also serves as a member of the Compensation Committee. Defendant Sievert received and continues to receive handsome compensation for his role as a Company director. In addition, Defendant Sievert solicited the false and misleading 2024 Proxy Statement, which led to the reelection of the Director-Defendants to the Board, allowing them to continue breaching their fiduciary duties to the Company. As a trusted-long time Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons, too, Defendant Sievert

BADGLEY MULLINS TURNER PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

130.    Additional reasons that demand on Defendant Zhang is futile follow. Defendant Zhang has served as a Company director since October 2023 and also serves as a member of the Audit Committee and the Nominating and Corporate Governance Committee. Defendant Zhang received and continues to receive handsome compensation for her role as a Company director. In addition, Defendant Zhang solicited the false and misleading 2024 Proxy Statement, which led to the reelection of the Director-Defendants to the Board, allowing them to continue breaching their fiduciary duties to the Company. As a trusted-long time Company director, she conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded her duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. For these reasons, too, Defendant Zhang breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

131.    Additional reasons that demand on the Board is futile follow.

132.    Defendants Campion (as current Chair), Allison, Knudstorp, and Zhang (the "Audit Committee Defendants") served as members of the Audit Committee at all relevant times. As such, they were responsible for the effectiveness of the Company's internal controls, the truth and accuracy of the Company's financial statements, and the Company's compliance with applicable laws and regulations. During the Relevant Period, they violated the Audit Committee Charter by engaging in or permitting the Company to engage in the dissemination of materially false and misleading statements to the public and to facilitate the Individual Defendants' violations of law, including breaches of fiduciary duty and violations of the Exchange Act; failed to adequately exercise their risk management and risk assessment functions; and failed to ensure adequate Board oversight of the Company's internal control over financial reporting, disclosure

COMPLAINT - 38

controls and procedures, and the Audit Committee Charter. Thus, the Audit Committee Defendants breached their fiduciary duties, are not independent or disinterested, and thus demand is excused as to them.

133.    All the Director-Defendants breached the duty of candor by making, or causing the Company to make, false and misleading statements regarding the Company's business, operations, and prospects, despite having knowledge of the falsity of those statements. The Director-Defendants may not be indemnified for breaching the duty of candor. As a result, all the Director-Defendants face a substantial likelihood of liability and cannot evaluate a demand with disinterest. Therefore, demand is futile, and thus, excused.

134.    In violation of the Code of Conduct, the Director-Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, waste of corporate assets, gross mismanagement, abuse of control, and violations of the Exchange Act. In further violation of the Code of Conduct, the Director-Defendants failed to comply with laws and regulations, maintain the accuracy of Company records and reports, avoid conflicts of interest, and conduct business in an honest and ethical manner. Thus, the Director-Defendants face a substantial likelihood of liability, and demand is futile as to them.

135.    The Director-Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director-Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Director-Defendants face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being

BADGLEY MULLINS TURNER PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

futile.

136.    Starbucks has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Directors have not filed any lawsuits against the Individual Defendants or others who were responsible for that wrongful conduct to attempt to recover for Starbucks any part of the damages Starbucks suffered and will continue to suffer thereby. Thus, any demand upon the Directors would be futile.

137.    The acts complained of herein constitute violations of fiduciary duties owed by Starbucks's officers and directors, and these acts are incapable of ratification.

138.    The Directors may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the shareholders of Starbucks. If there is a directors' and officers' liability insurance policy covering the Directors, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Directors, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Directors were to sue themselves or certain of the officers of Starbucks, there would be no directors' and officers' insurance protection. Accordingly, the Directors cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Directors is futile and, therefore, excused.

139.    If there is no directors' and officers' liability insurance, then the Directors will not cause Starbucks to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

140.    Thus, for all of the reasons set forth above, all of the Directors, and, if not all of them, at least five of the Directors, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

COMPLAINT - 40

**FIRST CLAIM**
**Against the Individual Defendants for Violations of Section 14(a) of the Exchange Act**

141.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

142.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

143.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

144.    The 2024 Proxy Statement was materially false and misleading and failed to disclose, *inter alia*, that: (1) Defendants did not possess reliable information with respect to Starbucks's projected revenue outlook and anticipated growth; (2) Defendants minimized the risk that Starbucks faced from seasonality and growth in foreign markets, especially China; and (3) because it was unable to handle the existing macro uncertainty and competition, particularly in the Chinese market, the Company's Reinvention platform failed to meet the Company's stated measures. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

145.    Moreover, the 2024 Proxy Statement was materially false and misleading because, despite assertions to the contrary, the Board was not adequately performing its risk oversight

**BADGLEY MULLINS TURNER** PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

1    functions.

2    146.    Defendants Allison, Campion, Ford, Hobson, Knudstorp, Mohan, Nadella,

3    Narasimhan, Servitje, Sievert, and Zhang knew or recklessly disregarded that by misrepresenting

4    or failing to disclose the foregoing material facts, the statements contained in the 2024 Proxy

5    Statement were materially false and misleading. The misrepresentations and omissions were

6    material to Plaintiff in voting on the matters set forth for shareholder determination in the 2024

7    Proxy Statement, including but not limited to, the re-election of directors.

8    147.    As a result of Defendants Allison, Campion, Ford, Hobson, Knudstorp, Mohan,

9    Nadella, Narasimhan, Servitje, Sievert, and Zhang causing the 2024 Proxy Statement to be false

10   and misleading, Company shareholders voted, *inter alia*, to re-elect each of them to the Board,

11   thereby allowing them to continue breaching their fiduciary duties to the Company.

12   148.    The Company was damaged as a result of Defendants Allison, Campion, Ford,

13   Hobson, Knudstorp, Mohan, Nadella, Narasimhan, Servitje, Sievert, and Zhang's material

14   misrepresentations and omissions in the 2024 Proxy Statement.

15   149.    Plaintiff, on behalf of Starbucks, has no adequate remedy at law.

16   **SECOND CLAIM**
     **Against the Individual Defendants for Violations of Section 10(b) of the Exchange Act**

17   150.    Plaintiff incorporates by reference and re-alleges each and every allegation set

18   forth above, as though fully set forth herein.

19   151.    The Individual Defendants participated in a scheme to defraud with the purpose

20   and effect of defrauding Starbucks. Not only is Starbucks now defending claims that it violated

21   Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, but the Company

22   itself is also one of the largest victims of the unlawful scheme perpetrated upon Starbucks by the

23   Individual Defendants. With the price of its common stock trading at artificially inflated prices

24   due to the Individual Defendants' misconduct, the Individual Defendants caused the Company to

25   repurchase millions of its own shares on the open market at artificially inflated prices, damaging

26

**BADGLEY MULLINS TURNER** PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

Starbucks.

152.    During the Relevant Period, the Individual Defendants also individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct designed to falsify the Company's press releases, public statements made in conference calls, and periodic and current reports filed with the SEC.

153.    The Individual Defendants employed devices, schemes and artifices to defraud while in possession of adverse, material, non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and misleading statements of material facts and omitting to state material facts necessary in order to make the statements made about Starbucks not misleading.

154.    The Individual Defendants, as top executives and directors of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as directors and officers of the Company, the Individual Defendants were able to and did control the conduct complained of herein and the content of the public statements disseminated by Starbucks. The Individual Defendants acted with scienter during the Relevant Period, in that they either had actual knowledge of the schemes and the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. The Individual Defendants were the top executives of the Company, or received briefings from them, and were therefore directly responsible for the schemes set forth herein and for the false and misleading statements and omissions disseminated to the public through press releases, conference calls, and filings with the SEC.

155.    In addition to each of the Individual Defendants approving the issuance of the Company's false and misleading statements while they were serving as a senior executives and/or directors of the Company, as members of the Board, the Individual Defendants then serving as

BADGLEY MULLINS TURNER PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

directors signed the Company's false and misleading statements filed with the SEC during the Relevant Period.

156.    By virtue of the foregoing, the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

157.    Plaintiff, on behalf of Starbucks, has no adequate remedy at law.

## THIRD CLAIM
### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

158.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

159.    The Individual Defendants, by virtue of their positions with Starbucks and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of Starbucks within the meaning of Section 20(a) of the Exchange Act. The Individual Defendants had the power and influence and exercised the same to cause the Defendants to engage in the illegal conduct and practices complained of herein.

160.    Plaintiff, on behalf of Starbucks, has no adequate remedy at law.

## FOURTH CLAIM
### Against the Individual Defendants for Breach of Fiduciary Duties

161.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

162.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Starbucks's business and affairs.

163.    Each of the Individual Defendants violated and breached their fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

164.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to

COMPLAINT - 44

**BADGLEY MULLINS TURNER** PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

protect the rights and interests of Starbucks.

165.    In breach of their fiduciary duties owed to Starbucks, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and/or misleading statements and/or omissions of material fact that failed to disclose, *inter alia*, that: (1) Defendants did not possess reliable information with respect to Starbucks's projected revenue outlook and anticipated growth; (2) Defendants minimized the risk that Starbucks faced from seasonality and growth in foreign markets, especially China; and (3) the Company's Reinvention platform failed to meet the Company's stated measures. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

166.    In further breach of their fiduciary duties, the Individual Defendants failed to correct and/or caused the Company to fail to correct the false and/or misleading statements and/or omissions of material fact, which renders them personally liable to the Company for breaching their fiduciary duties.

167.    In yet further breach of their fiduciary duties, during the Relevant Period, the Individual Defendants willfully or recklessly caused the Company to repurchase millions of shares of its own common stock at artificially inflated prices before the fraud was exposed.

168.    Also in breach of their fiduciary duties, the Individual Defendants caused the Company to fail to maintain internal controls.

169.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements and representations. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Starbucks's securities.

COMPLAINT - 45

170.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

171.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Starbucks has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

172.    Plaintiff, on behalf of Starbucks, has no adequate remedy at law.

## FIFTH CLAIM
### Against Individual Defendants for Unjust Enrichment

173.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

174.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Starbucks.

175.    The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Starbucks that was tied to the performance or artificially inflated valuation of Starbucks, or received compensation or other payments that were unjust in light of the Individual Defendants' bad faith conduct. This includes lavish compensation, benefits, and other payments provided to the Individual Defendants who breached their fiduciary duties to the Company.

176.    Plaintiff, as a shareholder and representative of Starbucks, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, including from insider transactions, payments to the Individual Defendants, the redemption of preferred stock, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

177.    Plaintiff, on behalf of Starbucks, has no adequate remedy at law.

COMPLAINT - 46

## SIXTH CLAIM
### Against Individual Defendants for Abuse of Control

178.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

179.    The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Starbucks, for which they are legally responsible.

180.    As a direct and proximate result of the Individual Defendants' abuse of control, Starbucks has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

181.    Plaintiff, on behalf of Starbucks, has no adequate remedy at law.

## SEVENTH CLAIM
### Against Individual Defendants for Gross Mismanagement

182.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

183.    By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Starbucks in a manner consistent with the operations of a publicly-held corporation.

184.    As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Starbucks has sustained and will continue to sustain significant damages.

185.    As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

186.    Plaintiff, on behalf of Starbucks, has no adequate remedy at law.

## EIGHTH CLAIM
### Against Individual Defendants for Waste of Corporate Assets

187.    Plaintiff incorporates by reference and realleges each and every allegation set forth

COMPLAINT - 47

above, as though fully set forth herein.

188.    The Individual Defendants caused the Company to pay the Individual Defendants excessive salaries and fees to the detriment of the shareholders and the Company.

189.    As a result of the foregoing, and by failing to properly consider the interests of the Company and its public shareholders, the Individual Defendants have caused Starbucks to waste valuable corporate assets while Starbucks suffered from undisclosed issues. The Individual Defendants' misconduct has caused the Company to incur many millions of dollars of legal liability and/or costs to defend unlawful actions and investigations and the Securities Class Action, to engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

190.    In addition, the Individual Defendants caused the Company to repurchase millions of shares of its own common stock at artificially inflated prices, thereby wasting the Company's assets.

191.    As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

192.    Plaintiff, on behalf of Starbucks, has no adequate remedy at law.

## <u>NINTH CLAIM</u>
**Against Defendants Narasimhan and Ruggeri for Contribution Under Sections 10(b) and 21D of the Exchange Act**

193.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

194.    Starbucks and Defendants Narasimhan and Ruggeri are named as defendants in the Securities Class Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendants Narasimhan's and Ruggeri's willful and/or reckless violations of their obligations as officers

COMPLAINT - 48

and/or directors of Starbucks.

195.    Defendants Narasimhan and Ruggeri, because of their positions of control and authority as officers and/or directors of Starbucks, were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of Starbucks, including the wrongful acts complained of herein and in the Securities Class Action.

196.    Accordingly, Defendants Narasimhan and Ruggeri are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

197.    As such, Starbucks is entitled to receive all appropriate contribution or indemnification from Defendants Narasimhan and Ruggeri.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of Starbucks, and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Starbucks;

(c)    Determining and awarding to Starbucks the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)    Directing Starbucks and the Individual Defendants to take all necessary actions to reform and improve Starbucks's corporate governance and internal procedures to comply with applicable laws and to protect Starbucks and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Certificate of

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵀᴴ Ave. W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

     1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

     2. a provision to permit the shareholders of Starbucks to nominate at least five candidates for election to the Board;

     3. a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations;

   (e) Awarding Starbucks restitution from Individual Defendants, and each of them;

   (f) Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

   (g) Granting such other and further relief as the Court may deem just and proper.

<b><u>JURY TRIAL DEMANDED</u></b>

  Plaintiff hereby demands a trial by jury.

Dated: October 21, 2024     Respectfully submitted,

            **BADGLEY MULLINS TURNER PLLC**
            */s/ Duncan C. Turner*
            Duncan C. Turner, WSBA No. 20597
            19910 50th Avenue W., Suite 103
            Lynnwood, WA 98036
            Tel: (206) 621-6566
            Email: dturner@badgleymullins.com

            **THE BROWN LAW FIRM, P.C.**
            Timothy Brown *(pro hac vice forthcoming)*
            767 Third Avenue, Suite 2501

New York, NY 10017
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
Email: tbrown@thebrownlawfirm.net

*Attorneys for Plaintiff*

COMPLAINT - 51

**BADGLEY MULLINS TURNER** PLLC
19910 50TH Ave. W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686